### In re Chester Mercantile Tax

*Guy G. DeFuria, John V. Diggins, Albert E. Smith* and *Charles P. Larkin, Jr.,* for appellants.

*Thomas A. Curran* and *Jacob Sapovits,* for respondent.

TOAL, J., February 25, 1949.—On January 26, 1949, certain taxpayers of the City of Chester filed an appeal from an ordinance of the city, viz., ordinance no. 73, enacted December 28, 1948, the appeal being filed in compliance with section 3 of the Act of June 25, 1947, P. L. 1145—authority to levy, assess and collect taxes. The appeal was made a supersedeas by special order of the court with the result that the provisions of the ordinance attempting to levy, assess and collect a certain mercantile tax have been suspended pending final determination of the appeal by this court. The court fixed a date for a hearing which has now been held, and the case has been argued orally before the court en banc, with submission of written briefs by each side. The case is now ready for disposition by this court.

Ordinance No. 73 of the City of Chester was enacted under authority given by the Act of June 25, 1947,

P. L. 1145. This statute was held constitutional by the Supreme Court of Pennsylvania in English v. Robinson Township School District, 358 Pa. 45.

In the instant case the sole testimony offered by appellants was: (1) Production of the following documentary evidence: Mercantile Tax Ordinance No. 73—1948 of the City of Chester; the proof of publication of the notice of intention of the city council to pass a mercantile tax ordinance on the vendors of goods, wares and merchandise within the City of Chester at a rate of three fifths of a mill on the gross volume of wholesale business and one mill on retail; ordinance no. 78—1948, which was the budget ordinance of the City of Chester; (2) oral evidence by the Chester City accountant, who produced a statement of the receipts, expenditures and balances in the 1945 $500,000 post-war improvement ordinance of the City of Chester. This statement indicated that a balance of $154,000 remained in the bond issue fund.

The city on its side produced the following documentary evidence: The 1945 $500,000 bond issue ordinance as certified to the Court of Quarter Sessions of Delaware County and the Secretary of Internal Affairs of the Commonwealth of Pennsylvania, which showed on its face that the funds derived from the bond issue were specifically earmarked for certain capital improvements. W. Alrich Price, director of finance and accounts, testified on behalf of the city that the balance remaining in the post-war fund would be exhausted during the year 1949 by the completion of certain post-war projects which were authorized under the bond issue. He also testified that at the time the mercantile tax ordinance was introduced in city council on November 24, 1948, the city had not completed its budget estimates for the year 1949, and that during the 30-day period when council was advertising the notice of intention to enact the mercantile tax ordinance, city

council discovered that the rate of three fifths of a mill on wholesale and one mill on retail would not yield the amount necessary to balance the 1949 budget. Mr. Price testified he secured the best available figures on the gross volume of retail and wholesale business within the City of Chester, and ascertained that, based on these estimates, the rate of tax had to be increased to meet the city's financial requirements for 1949. The city offered in evidence the certification of the amount of the assessment of taxable real estate in the City of Chester for the year 1949. The city further showed that the estimated receipts based on three fifths of a mill on wholesale and one mill on retail gross sales during 1949 would amount only to $90,200, whereas the amount required to balance the 1949 budget was $168,400. The city further showed that immediately after the notice of intention to enact the mercantile tax ordinance was published in the Chester Times, certain owners of businesses, in the City of Chester appeared before city council and on their own behalf and through counsel entered protests against the type of tax proposed to be imposed; and that during the entire time council was giving consideration to the enactment of the ordinance these protestants by themselves, or through legal counsel, conferred with members of the city council and were informed that the tax rates set forth in the original notice of intention to adopt the ordinance were not sufficient to produce the money added to balance the 1949 budget.

Appellants in this case are not questioning the validity of the Act of June 25, 1947, supra, authorizing the appellee to impose a mercantile tax on certain classes of taxpayers; nor do they say that such a tax is unconstitutional and void for lack of uniformity. What they contend is that the City of Chester ordinance is invalid and void because (1) of inherent defects in the ordinance itself, apparent on its face; (2)

that the notice of intention to enact the ordinance was not given in accordance with the mandatory requirements of Act of 1947, supra, because in the original and only notice given, the rates of taxation were fixed at three fifths mill on wholesale and one mill on retail gross sales, whereas the ordinance as finally adopted was amended on third reading to change the rates of taxation to one mill on wholesale and two mills on retail gross sales; and (3) that appellee (city) does not need the money expected to be obtained from the mercantile tax for the year 1949 because appellee has sufficient available funds from other sources to meet its budgetary requirements, and that therefore, the tax is unreasonable and excessive.

We have arranged the points advanced in the above order because this appears to be a logical and practical method of approach. If the ordinance is inherently defective on its face, then of course we need pursue the inquiry no further because it would of necessity fall. However, if no such defects appear in the ordinance itself, we must go outside of it and examine whether the requirements of the enabling act as to notice of intention to adopt the ordinance have been complied with sufficiently to render adoption of the ordinance a lawful exercise of the legislative power of the appellee (city). If both of the two above points can be found for appellee and against appellants, then point three becames important and this court must decide the reasonableness or unreasonableness of the tax.

Appellants say the ordinance is so indefinite, unreasonable and uncertain on its face that it is invalid as a matter of law. They point to section 6(a) as an example of indefiniteness and uncertainty; this section reads as follows:

"Every person subject to the payment of the tax hereby imposed *who has commenced his business at least one (1) full year prior to the beginning of any*

*license year* shall compute his annual gross volume of business upon the actual gross amount of business transacted by him *during the preceding license year.*" (Italics supplied.)

The complaint of appellants is that as there was no *license year* in existence prior to the adoption of the ordinance, taking effect February 1, 1949, to attempt to compel a taxpayer to compute his tax based upon a period of time which could be said to be nonexistent, rendered the ordinance uncertain and indefinite.

Examining the ordinance further we find section 2 (*f*) defines "license year" as "the twelve-month period beginning the first day of February in each and every year".

Section 3 provides:

". . . for the license year beginning February 1, 1949 . . . the city shall issue mercantile licenses and hereby imposes an annual mercantile license tax. . . ."

Section 4 provides:

"Beginning February 1, 1949, and for each license year thereafter, every person desiring to continue to engage in the business of wholesale, or retail . . . vendor or dealer in goods . . . shall, on or before the first day of February of each license year . . . apply for . . . a mercantile license. . . ."

Section 5 provides:

"Every person engaging in the following occupations on businesses in the city shall pay an annual mercantile tax for the license year beginning February 1, 1949, and for each license year thereafter. . . ."

It is clear from the above that the definite purpose of the ordinance was to collect the mercantile tax covering the period starting February 1, 1949, and ending January 31, 1950, and from then on from license year period to license year period.

This is made manifestly clear when section 7 (*b*) of the ordinance is read:

"Every person subject to the tax imposed . . . *who has commenced his business at least one (1) full year prior to the beginning* of any license year shall on or before the fifteenth day of April following file with the collector a return setting forth . . . the amount of the tax due."

And further, section 8 of the ordinance provides:

"At the time of filing the return the person making same shall pay the amount of the tax shown as due thereon to the collector."

Appellants point out that in a similar ordinance, already approved by the appellate court, the tax or license year is a *calendar year*—(Ordinance No. 488 of City of Pittsburgh)—passed upon by the Supreme Court in Federal Drug Company v. Pittsburgh et al., 358 Pa. 454 (1948). Appellants contend that the use of the adjective "license" in the Chester City ordinance to designate the tax year creates such an ambiguity that no reasonable person could possibly understand what is meant by the language used. It is plain to the court what is meant by the city; if we treat the adjective "license" as a mere surplusage, then the language would read as follows:

"(a) Every person subject to . . . tax . . . who commenced his business at least one (1) full year prior to the beginning of any license year shall compute his annual gross volume of business upon the actual gross amount of business transacted by him during the preceding year."

The term "preceding year" would then mean the 12 calendar months immediately preceding the first day of February of 1949, and immediately preceding each first day of February thereafter, during the life of the ordinance.

In 2 McQuillin Municipal Corporations, 2d ed., revised, p. 714, it is said:

"Sec. 687 (651)—Ordinances must be definite and certain. An ordinance must be clear, precise, definite and certain in its terms. If the ordinance is so vague that its precise meaning cannot be ascertained it will be declared void, and this is true although it may be otherwise constitutional and valid. In other words, it must be framed in terms sufficiently clear and definite to show what it tends to require or prohibit and punish. The language must be such as to be readily understood by those upon whom it is to operate.

"Although the general rule just stated is uniformly applied, it is equally well settled that courts will not by construction defeat the purpose and objects intended by an ordinance if it is sufficiently definite to be understood with reasonable certainty. And while courts constantly affirm that ordinances should be certain in their application and operation, and their execution not left to the caprice of those whose duty it is to enforce them, it is self-evident that there is no formula, or 'hard and fast rule determining whether or not any given ordinance is void for indefiniteness. The rule of reason must be applied to every case as it arises. Wide latitude must be left to the city authorities in the framing of city ordinances.' "

The legislature in 1937 enacted the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551, and while this act only applies to statutes enacted by the State legislature, yet it is suggestive of what sound interpretation of written law, including municipal ordinances, should be. This act contains the following language:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention. . . . Every law should be construed, if possible, to give effect to all its provisions."

This court is of the opinion that section 6(a) of Ordinance No. 73 of the City of Chester is not indefinite

and uncertain to the degree that renders it incapable of understanding by a reasonable person and that a proper reading of it should eliminate the adjective "license" as mere surplusage, thus making the meaning of the section crystal clear.

Appellants further contend that section 9(b) is unreasonable and defective because it attempts to delegate to the collector the authority to "make such regulations" as may be necessary or convenient to effectuate the ordinance; further, that section 14 is unreasonable and defective because it provides a penalty of a fine and imprisonment for any person who shall neglect or refuse to comply with "any regulation or requirement" made pursuant to the terms of the ordinance.

Appellee (city), in the opinion of this court, is on dangerous ground when they delegate or attempt to delegate authority to any person or persons to "make such regulations" and then provide for a criminal penalty for neglect or refusal to comply with "any regulation".

This language in the ordinance is unfortunate, but not beyond remedy in the opinion of the court. We believe that unlike the case of Kellerman v. Philadelphia, 139 Pa. Superior Ct. 569, the provisions of the Chester City ordinance can be saved by severability, because its entirety of thought is not destroyed. Section 9(b) has many other useful and proper provisions in it, and the deletion of the complained of language will not do violence to the intent of the section. We, therefore, hold that the provision in section 9(b), attempting to authorize the collector "to make such regulations" as may be necessary or convenient to effectuate the ordinance is unconstitutional and void as an unlawful delegation of legislative power with no proper or lawful standards set up or fixed to determine what such regulations should be.

Likewise, we hold that the provision in section 14 of the ordinance, providing a penalty for neglect or refusal of any person to comply with "any regulation or requirement made pursuant to the terms of the ordinance," to be unconstitutional and void as an unlawful attempt to fix a penalty for violation of regulations improperly and unlawfully delegated to be promulgated by someone other than the proper legislative body.

The complaint that the ordinance does not contain a provision in it giving aggrieved person or persons the right to appeal to a court of record from the action of the collector in assessing the amount of tax demanded to be paid, is not a valid one, as the general law of the Commonwealth of which the appellee (city) is an agent, leaves open the courts for redress at all times. The omission to write this provision into the ordinance is not a fatal defect in the court's opinion.

There is no question by appellants that the original notice of intention to enact the ordinance was given by the appellee (city) fully in accord with the requirements of the Act of 1947, supra. However, they say that the change made in the rate of tax, as adopted in the final draft of the ordinance, invalidated the original notice of intention, in that *the substantial nature of the tax* having been changed by council, the public should have been notified by a second published notice of the changed tax rates prior to the passage of the ordinance imposing the tax.

Section 2 of the Act of 1947 provides as follows:

"Prior to the passage of any ordinance . . . imposing a tax or license fee, . . . such political subdivision shall give notice of the intention to pass such ordinance. . . . Such notice shall be given in addition to all other notices required by law to be given and shall set forth the *substantial nature of the tax* or license fee to be imposed by the proposed ordinance. . . . Publication

of such notice shall be made by advertisement once a week for four weeks in a newspaper of general circulation within such political subdivision." (Italics supplied.)

It appears from a reading of this section of the act that a municipal body is required to give notice of its intention to pass an ordinance providing for the enactment of the tax as contemplated by the Act of 1947, and that such act authorizes third class cities to levy, assess and collect such tax on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivision as it shall determine with certain limitations.

Section 2 requires the notice of intention to set forth the substantial nature of the tax to be imposed by the proposed ordinance, and the city contends that the notice, which was duly advertised between November 24, 1948, and December 15, 1948, did set forth the substantial nature of the tax, i.e., that the City of Chester intended to enact a mercantile tax ordinance imposing a tax on the retail and wholesale vendors of goods, wares and merchandise within the City of Chester and that the rate or rates as set forth in such notice were not binding upon city council, but constituted only a phase of the problem which was peculiarly within the province of the legislative functions of the city and subject to be increased or decreased in order to meet the budget requirements of the city for the year 1949.

Appellants rely upon the case of Brown v. Seward Independent School District, 64 D. & C. 616, as authority for their contention that council was required to readvertise its notice of intention upon amending the ordinance to increase the rates. In the Brown case the Common Pleas Court of Westmoreland County struck down a resolution by a school district imposing a tax under the Act of 1947 on severance of coal, stone, etc., in an independent school district. In this particular

case the court held that the original resolution passed by the school district was void from its inception and could not be validated by any amendment. The resolution was void because on its face it imposed a tax which would produce five times the revenue which the school district was authorized to levy under the Act of 1947 and the school district attempted by amendment to cure many legal defects in its original resolution. No irregularity appeared in the original notice of intention as advertised in the instant case. It gave notice of *"the substantial nature of the tax"* to be imposed. Whether council later increased or reduced the actual rate of taxation was well within its legislative power so to do and would not change *the substantial nature of the tax* itself. The court is of the opinion that no irregularity, as far as the procedure required to be taken by council to adopt ordinance no. 73 is concerned, exists in this case.

We now take up the final complaint of appellants, viz., that the city does not need the money to be produced from the mercantile tax, and therefore the tax is unreasonable and excessive. The only evidence produced by appellants on this point is that the city has a balance of approximately $154,000 remaining in a certain postwar fund, resulting from a $500,000 bond issue. The evidence showed that this balance was specifically pledged for certain designated capital expenditures to be consummated in the year 1949. Appellants are demanding that the city be made to use this postwar fund balance for current expenditures to balance its 1949 budget, also that this court substitute its discretion and judgment for the sound discretion and judgment of council, although nowhere in the evidence do appellants show that council has in the slightest degree been guilty of an abuse of discretion. Appellants have failed or neglected to show by competent evidence that the tax of one mill on wholesale and two mills on

retail gross sales will produce a sum in excess of the amount necessary to balance the city's budget. This was appellant's burden, and, having failed to meet the burden, they cannot expect this court to invent the necessary evidence or to imagine it into the case. The amount to be realized from the tax is approximately $168,400 and appellants have not attempted to rebut this estimate.

The test is not whether the court would have legislated in the same way or reached the same conclusion, but whether the power existed in the Council of the City of Chester to legislate as it did. Nor does the fact that while Chester has levied a one-mill tax on wholesale and two mills on retail, other cities may or may not levy a similar tax, or may impose a similar tax at a different rate, have any effect upon the question: English v. Robinson Township School District, 358 Pa. 45, 54, quoting Clouser et al. v. Reading City et al., 270 Pa. 92.

In a recent decision by the Court of Common Pleas of Berks County sustaining a similar mercantile tax ordinance in the City of Reading, Shanaman, J., in delivering the opinion of the court, stated, in disposing of an objection raised to the reasonableness of the tax:

"Appellants contend that the ordinance is unreasonable, and that the rates levied by it are excessive. 'The question of the reasonableness of a municipal ordinance is, in the first instance, for the municipal council. Thus, the reasonableness of the exercise of municipal police power is primarily a question addressed to the good judgment and common sense of the legislative authorities of the municipality. A court will not hold an ordinance void as unreasonable where there is room for a fair difference of opinion on the question, even though the correctness of the legislative judgment may be doubtful, and the court may regard the ordinance as not the best which might be

adopted for the purpose.' 37 American Jurisprudence, p. 823.

" 'In order to declare a municipal ordinance invalid because it is unreasonable or unconstitutional, the invalidity must be clearly and satisfactorily shown, and must be palpable and manifest.' 37 American Jurisprudence, p. 815.

" 'There is no such thing as perfect uniformity and equality in taxation. The best that can be done, and all that is required, is that it should approximate uniformity and equality as nearly as possible.' *Wilson v. Philadelphia*, 330 Pa. 340, 352."

In dismissing appellants' claim that the tax was excessive in the Reading case, Shanaman, J., further stated:

"In conclusion the claim of the appellants that the tax is excessive, has not been established by any evidence. Section 3 of the Act of Assembly of June 25, 1947, 42 Purdon, Section 2015.3 (pocket parts), provides *inter alia*, that:

" 'It shall be the duty of the court to declare the ordinance and the tax imposed thereby to be valid unless it concludes that the ordinance is unlawful or finds that the tax imposed is excessive or unreasonable; but the court shall not interfere with the reasonable discretion of the legislative body in selecting the subjects or fixing the rates of the tax.'

"As to the amount permissible, Section 6 of the Act of Assembly provides that, 'Any tax imposed under this act shall not be subject to any limitations under existing laws as to the rate or amount.' The act itself, however, in Section 1 provides that the total amount of the tax shall not exceed the amount of the total assessed valuation of real estate, multiplied by the maximum legal millage imposed on real estate. The City of Reading's assessment of real estate for 1948 and the

legal maximum levy are in the record and show that the rate imposed by the mercantile license tax revenues under consideration, results in an estimated total of less than one-fifth of the amount that the statute itself adopts as a formula. It is clear that in the absence of evidence we are unable to rule that the levy is excessive. 'The power of a court to declare an ordinance void because it is unreasonable is one which must be carefully and cautiously exercised.' 37 American Jurisprudence, page 814. We are authorized to state that Judge Hess, who, being occupied in the trial of another case in our court, did not sit at the hearing, concurs and our decision is unanimous."

Modern taxation is a vexing and perplexing field. The Act of 1947 represented a retransfer by the State to home rule. Pennsylvania is a pioneer in this field because no other State has so far made such a broad grant of powers to its political subdivisions. This has resulted in a revival of democratic discussion in each local community where the Act of 1947 has been used. Generally speaking it can be expected that the members of city councils, borough councils, or other local legislative bodies, will not generally enact unnecessary and unreasonable taxes. They live in the community and know full well that they are directly responsible to the community for the proper exercise of their legislative powers. Taxing measures are unpopular. No legislative body, particularly where the situation is local and the consequences of an unpopular step may have immediate repercussions, enjoys imposing additional tax burdens. But, when continuing additional services and facilities are demanded of the cities, the whole burden can no longer continue to be cast upon real estate. A point may be reached in real estate taxation where it becomes injurious to the economy of the local community. With a tax rate on realty remaining at the same level, and where assessments have not been ma-

terially increased due to the lack of new construction over the war years, every municipality of any size in Pennsylvania is faced with the same problem—how to meet rising costs and rising demands for government services without doing a real injury to local economy.

The burden of any tax must fall somewhere. In the exercise of discretion vested in them by law, the Council of the City of Chester has decided by appropriate legislation that a tax at the rate of two mills on retail and one mill on wholesale shall be imposed upon the privilege of conducting the types of business enumerated in the ordinance now under attack.